DEBORAH MATTHEWS, Employee, Plaintiff-appellee v. CHARLOTTE-MECKLENBURG HOSPITAL AUTHORITY, Self-Insured, Employer, Defendant-Appellant

No. COA97-1490

(Filed 5 January 1999)

## 1. Workers' Compensation— Rules—dismissal for violation

The Industrial Commission did not err in a workers' compensation action when it vacated the dismissal of plaintiff's case by a Deputy Commissioner based upon plaintiff's violation of an order of the Deputy Commissioner and her failure to appear for her hearing. The Commission, its members, and its deputies may order dismissal of an action or proceeding for violation of the Workers' Compensation Rules, but such an order must specifically enumerate which of the Rules have been violated and what actions constitute the violations. The Deputy Commissioner here

made no findings of a Rules violation; even assuming that there was a violation and a proper order specifying the violation, dismissing this case was an abuse of discretion when viewed in light of the policy concerns of the Worker's Compensation Act because it effectively terminates plaintiff's exclusive remedy when other less permanent sanctions were available.

**2. Workers' Compensation— course of treatment—direction by employer**

It was noted in a workers' compensation action that the Industrial Commission had based an order on a flawed analysis of N.C.G.S. § 97-25; although the Commission reasoned that employers cannot make motions to designate a treating physician because the statute expressly grants employees the power to request a change in their treating physician and does not make a similar grant to employers, the purpose of the statute is to authorize the Commission to direct a course of treatment and penalize non-compliance by suspending compensation. The statute was not enacted to create and exclusively define the rights of employees and employers with regard to the course of treatment.

**3. Workers' Compensation— course of treatment—employer's motion—reasonable grounds**

It was noted in a workers' compensation action that an employer's motion to direct the course of treatment must be warranted by reasonable grounds. The motion in this case was well-grounded in fact and demonstrated a sufficient basis to support the challenge to the current treatment regimen advocated by plaintiff; therefore, defendant's motion was appropriate and the Executive Secretary's designation of a treating physician pursuant to the motion is within the purview of N.C.G.S. § 97-25.

**4. Workers' Compensation— necessity for hearing—procedural due process**

The Industrial Commission erred in a workers' compensation action by not conducting a hearing or remanding for an evidentiary hearing where defendant was unable to offer evidence supporting its case due to a procedural history involving a change of treating physician which was not appealed and hearings resulting in a suspension of compensation which were appealed. The evidence, including the transcript from the hearing below, is insufficient to resolve all the issues and the key finding resulting in the reinstatement of the award was not supported by competent evi-

MATTHEWS v. CHARLOTTE-MECKLENBURG HOSP. AUTH.

[132 N.C. App. 11 (1999)]

dence in the record; additionally, defendant's procedural due process rights were offended in that the Commission eliminated any opportunity for defendant to meet its burden of proof. Finally, on remand it is the responsibility of the full Commission to conduct the hearing.

**5. Workers' Compensation— expenses of attending future hearings—improper**

The Industrial Commission erred in a workers' compensation action by taxing the expenses necessary for plaintiff to attend future hearings where defendant had reasonable grounds for its motion and application to suspend compensation; furthermore, the Commission exceeded its statutory authority in ordering payment of future travel expenses by assessing costs not arising from any hearing.

Appeal by defendant from order of North Carolina Industrial Commission entered 20 May 1997. Heard in the Court of Appeals 16 November 1998.

*Tania L. Leon for plaintiff-appellee.*

*Hedrick, Eatman, Gardner & Kincheloe, L.L.P., by Thomas W. Page and Thomas M. Morrow, for defendant-appellant.*

SMITH, Judge.

On 27 October 1991, an Opinion and Award by Deputy Commissioner William L. Haigh concluded that Deborah Matthews (Matthews) was *temporarily*, totally disabled and entitled to $406.00 per week for as long as she remained disabled. Deputy Commissioner Haigh's findings included the following:

Matthews began working for Charlotte-Mecklenburg Hospital Authority (Char-Meck) in January 1991. At that time, Matthews had a history of somatization disorder with Munchausen's syndrome (feigning an illness warranting some type of unnecessary medical intervention). From August 1989 to December 1990, Matthews entered various hospitals requesting injections of narcotics for alleged abdominal pain and migraine headaches. She intentionally swallowed a pin in an attempt to undergo surgery, pretended to pass a kidney stone, and falsely denied having a prior extensive hospitalization and work-up for complaints of abdominal pain. In addition, two of her treating physicians declined to treat her further because of her drug-seeking

MATTHEWS v. CHARLOTTE-MECKLENBURG HOSP. AUTH.

[132 N.C. App. 11 (1999)]

behavior involving narcotics and sleeping pills. After being employed less than one month, she suffered a back injury while working. On 1 March 1991, a CT scan, which does not reveal whether the annulus is intact, indicated that Matthews had a diffuse annular bulge but *no herniated disc or nerve root encroachment.* Matthews was treated by Dr. Samuel J. Chewning, who prescribed physical therapy and pain medication. On 8 March 1991, Matthews aggravated her injury while moving a five-pound weight at home. On 11 March 1991, her legs became weak and she fell from a stool to a tile floor. On 14 March 1991, Dr. Chewning concluded that a two-by-four inch bruise and six scratches in a starlike configuration over the bruise were totally inconsistent with Matthews' description of the fall. After Matthews changed doctors and briefly attempted to work at Wal-Mart, Dr. Alfred L. Rhyne performed surgery on Matthews to repair a tear in her annulus fibrosus. By 3 June 1992, Dr. Rhyne recommended that Matthews seek help with withdrawal from her apparent drug dependency. By 24 August 1992, Matthews had no back pain. Since 26 February 1991, however, Matthews has been deemed *temporarily,* totally disabled.

Char-Meck unsuccessfully appealed the award to the North Carolina Industrial Commission (the Commission). On 3 March 1995, Char-Meck moved to designate Dr. John Welshofer as Matthews' treating physician. On 23 March 1995, Char-Meck's motion was granted by then Executive Secretary Nick Davis, and Matthews *did not appeal the decision.* On 25 May 1995, Char-Meck filed a Form 24 application to terminate or suspend payment of compensation according to the terms of Workers' Compensation Rule 404. By the time of its application, Char-Meck had paid compensation to Matthews for the period spanning 25 February 1991 to 30 May 1995. The total amount of its indemnity compensation paid at the time of their application was $100,493.42. In support of its application, Char-Meck alleged that Matthews failed to attend appointments with her designated physician. On 5 July 1995, after an informal telephonic hearing, Special Deputy Commissioner W. Bain Jones ordered Matthews' compensation suspended for failure to comply with treatment as directed by the order of 23 March 1995. Due to the informal nature of this hearing, Deputy Commissioner Jones made no findings of fact and conclusions of law. Rather, he stated "reasons" for his decision. Matthews appealed, and her case was docketed for a formal hearing to be held on 7 May 1996. Having moved to Tennessee, however, Matthews failed to attend the formal hearing. As a result, presiding Deputy Commissioner Mary M. Hoag rescheduled Matthews'

hearing for a later date and ordered that Matthews attend all future hearings. Matthews failed to attend the second hearing, and rather than appearing at a third hearing, she had her counsel present an affidavit. In the affidavit, Matthews made factual assertions concerning her inability to appear. She also stated, "I understand that my attorney will be at a disadvantage in presenting my case [] if I cannot testify in person, but I agree to proceed on that basis." As a result of her failure to appear, Deputy Commissioner Phillip A. Holmes dismissed Matthews' appeal with prejudice. Matthews appealed the dismissal to the Full Commission, which granted her motion for reinstatement of compensation pending her appeal. After reviewing the record, briefs, and argument of counsel, the Full Commission vacated the dismissal of Matthews' case, reinstated her award, and ordered Char-Meck to pay plaintiff's necessary travel expenses incurred by attending future hearings. On reconsideration, the Full Commission approved its prior order. Employer appeals.

Char-Meck contends the Commission erred when it vacated the dismissal of Matthews' appeal because Matthews had violated the order of the Deputy Commissioner and had failed to comply with statutory requirements by refusing to appear for her hearing. Char-Meck also assigns error to the Commission's vacating the dismissal of Matthews' claim because Char-Meck was effectively denied the opportunity to offer evidence at the hearing while the Commission accepted Matthews' affidavit in lieu of testimony. Finally, Char-Meck assigns error to the order of the Commission compelling Char-Meck to pay for Matthews' necessary expenses incurred by attending future hearings.

"On appeal, the Full Commission's findings of fact are conclusive if supported by competent evidence, even if there is evidence that would support contrary findings." *Pulley v. City of Durham*, 121 N.C. App. 688, 693, 468 S.E.2d 506, 510 (1996) (citations omitted). However, if the findings are predicated on an erroneous view of the law or a misapplication of law, they are not conclusive on appeal. *See Radica v. Carolina Mills*, 113 N.C. App. 440, 439 S.E.2d 185 (1994). Furthermore, if a finding of fact is essentially a conclusion of law, it will be treated as such on appellate review. *See id.* These well-established principles guide our review in the instant case.

[1] Char-Meck first argues that the Commission erred when it vacated the dismissal of Matthews' appeal. We disagree. N.C. Gen. Stat. § 97-80(a) (Cum. Supp. 1996) gives the Commission the power to

make rules consistent with the Workers' Compensation Act for carrying out its provisions. Under the authority of this statute, the Commission enacted Rule 802. Rule 802 permits the Commission to "subject the violator [of Workers' Compensation Rules (the Rules)] to any of the sanctions outlined in Rule 37 of the North Carolina Rules of Civil Procedure. . . ." N.C. Admin. Code tit. 4, r. 10A.0802 (Jan. 1990). Rule 37 of the North Carolina Rules of Civil Procedure (Rule 37) permits, among other sanctions, "dismissing the action or proceeding or any part thereof." N.C. Gen. Stat. § 1A-1, Rule 37(b)(2)(a)c (1990). Based on our reading of these rules, the Commission, its members, and its deputies (adjudicators) may order dismissal of an action or proceeding for violation of the Rules. We hold that such an order must specifically enumerate which of the Rules have been violated and what actions constitute the violations. Because Deputy Commissioner Holmes made no findings of a rules violation and because there is no other statutory authorization for the dismissal of proceedings, dismissal was inappropriate.

However, assuming that Matthews' failure to appear constituted a violation of the Rules and that the order dismissing Matthews' case specified which of Matthews' acts were violations, we still deem dismissal inappropriate. This Court has questioned whether administrative termination of disability awards on grounds other than those provided by statute is permissible. *See Kisiah v. Kisiah Plumbing*, 124 N.C. App. 72, 476 S.E.2d 434 (1996), *disc. review denied*, 345 N.C. 343, 483 S.E.2d 169 (1997). Furthermore, our Supreme Court has indicated that the Workers' Compensation Act is to be construed liberally, and benefits are not to be denied upon technical, narrow, or strict interpretation of its provisions. *See Harrell v. Harriet & Henderson Yarns*, 314 N.C. 566, 336 S.E.2d 47 (1985). Generally, the choice of sanctions is a matter reviewed for abuse of discretion only. *See Routh v. Weaver*, 67 N.C. App. 426, 313 S.E.2d 793 (1984). However, with regard to Rule 37, this Court has stated, "Sanctions directed to the case's outcome, including default judgments and dismissals, although reviewed according to the abuse of discretion standard, are to be evaluated in light of the leading policy concern surrounding discovery rules, which is to encourage trial on the merits." *Lincoln v. Grinstead*, 94 N.C. App. 122, 125, 379 S.E.2d 671, 672 (1989) (citing *American Imports, Inc. v. Credit Union*, 37 N.C. App. 121, 124, 245 S.E.2d 798, 800 (1978)). Accordingly, dismissal pursuant to Rule 802 must be evaluated in light of the policy behind North Carolina's Workers' Compensation Act, to provide a swift and certain remedy to an injured worker and to ensure a limited and determinate liability for

employers. *See Barnhardt v. Yellow Cab Co.*, 266 N.C. 419, 146 S.E.2d 479 (1966). Thus, when determining whether dismissal was an abuse of discretion, the exclusivity provision of N.C. Gen. Stat. § 97-10.1 (1991) is always relevant. Other considerations include the appropriateness of alternative sanctions under Rule 37, the proportionality of dismissal to the actions meriting sanction, and whether other statutory powers, such as holding a person in contempt under N.C. Gen. Stat. § 97-80 (Cum. Supp. 1996), can effectuate the result desired by the imposition of sanctions. In the instant case, dismissal violates our Supreme Court's guidance in *Harrell*, 314 N.C. 566, 336 S.E.2d 47, because it effectively terminates Matthews' exclusive remedy when other less-permanent sanctions, such as civil contempt, were available to Deputy Commissioner Holmes. Thus, when viewed in light of policy concerns of the Workers' Compensation Act, dismissing Matthews' case was an abuse of discretion. We, therefore, overrule Char-Meck's first assignment of error.

[2] Char-Meck further assigns error to the order of the Industrial Commission alleging that there was never a hearing on the merits of the case regarding the issues at bar. We agree. We note at the outset that the order of 20 May 1997 is based on the Commission's determination that former Executive Secretary Davis's designation of a treating physician was improvidently granted. The Commission based its decision on a flawed analysis of section 97-25. They reasoned that because section 97-25 expressly grants employees the power to request a change in their treating physician, the absence of a similar grant to employers means that employers cannot make motions to designate a treating physician. This is an erroneous view of the law, and under *Radica*, all findings based upon it are not conclusive on appeal. *See Radica*, 113 N.C. App. 440, 439 S.E.2d 185.

Section 97-25 reads in pertinent part,

Medical compensation shall be provided by the employer. In case of a controversy arising between the employer and employee relating to the continuance of medical, surgical, hospital, or other treatment, the Industrial Commission may order such further treatments as may in the discretion of the Commission be necessary.

The Commission may at any time upon the request of an employee order a change of treatment and designate other treatment suggested by the injured employee subject to the approval of the Commission, and in such a case the expenses thereof shall

be borne by the employer upon the same terms and conditions as hereinbefore provided in this section for medical and surgical treatment and attendance.

N.C. Gen. Stat. § 97-25 (1991). The first paragraph of section 97-25 authorizes the Commission to "order such further treatments as may in the discretion of the Commission be necessary" to resolve controversies "arising between the employer and employee relative to the continuance of . . . treatment." *Id.* The fact that the legislature authorized the Commission to use discretion in its resolution of controversies relating to the "continuance" of treatment demonstrates that the legislature anticipated disputes over the proper course of treatment and authorized such disputes to be brought before the Commission. The Commission, however, interprets the second paragraph of section 97-25 as creating the right to request a change in treatment, and because there is no similar language pertaining to the rights of employers, employers have no such right. We disagree. While section 97-25 does permit an injured employee to select a physician of his or her choosing, the choice is subject to the approval of the Commission. This section was not enacted to create and exclusively define the rights of employees and employers with regard to the course of treatment. Rather, the purpose of section 97-25 is to authorize the Commission to direct the course of treatment and penalize non-compliance by suspending compensation. In addition, Workers' Compensation Rule 609 provides for the filing of motions with the Commission. N.C. Admin. Code tit. 4, r. 10A.0609 (March 1995). Because Rule 609 permits the filing of motions with the Commission and section 97-25 allows the Commission to resolve disputes over treatment, Executive Secretary Davis properly considered Char-Meck's motion.

[3] We note that an employer's motion to direct the course of treatment must be warranted by reasonable grounds. *See* N.C. Gen. Stat. § 97-88.1 (1991). Here, Char-Meck's motion to designate the treating physician was well-grounded in fact and demonstrated a sufficient factual basis to support its challenge to the current treatment regimen advocated by Matthews. As the findings made in the original opinion and award indicate, Matthews suffers from a condition which causes her to seek unnecessary medical attention. Matthews has demonstrated a dependency on narcotic pain medication. There is also evidence that Matthews was referred to the doctor designated by Char-Meck for treatment of these conditions. Because these facts form reasonable grounds on which Char-Meck could contest

Matthews' course of treatment, appellant's motion, as permitted by Rule 609, was appropriate. Executive Secretary Davis's designation of the treating physician pursuant to Char-Meck's motion is within the purview of section 97-25; thus, the order of 23 March 1995. was properly granted. As this order was not appealed, it governed Matthews' treatment until a subsequent order of the Commission directed otherwise.

[4] As Rule 404 and section 97-25 allow, Char-Meck submitted an application to suspend Matthews' compensation for non-compliance with the order directing treatment. Because she had not complied with the order, Deputy Commissioner Holmes properly suspended Matthews' compensation. To reinstate her compensation, Matthews could have permitted treatment by her designated physician, selected another physician subject to the Commission's approval, or appealed the administrative decision under Workers' Compensation Rule 703.

Matthews maintains that she attended one appointment with the doctor designated by Char-Meck. Despite thoroughly reviewing the record on appeal, the only indication that this appointment took place are assertions by Matthews' counsel made in her application for review and motion in support of the application. In her brief before this Court, Counsel for Matthews cites her own motion in support of this fact. An unverified application and written motion, otherwise unsupported by the record, is not competent evidence upon which the Commission could base a finding that Matthews attended an appointment with the designated physician. Because there is no competent evidence indicating that Matthews was treated by her designated physician, the Commission could not conclude that Matthews reinstated her right to compensation by compliance with the order directing treatment. Neither did she reinstate her right to compensation by requesting that the Commission approve her choice of physicians under section 97-25.

Matthews did, however, appeal the suspension pursuant to Worker's Compensation Rule 703. Rule 703 states, "The Commissioner or Deputy Commissioner hearing the matter shall consider all issues *de novo*. . . ." N.C. Admin. Code tit. 4, r. 10A.0703(3) (March 1995). Matthews and Char-Meck state that on appeal from an administrative decision, the *de novo* standard of review places the burden on Char-Meck to prove its case anew. We agree. However, because Matthews' actions led to the dismissal of her appeal, Char-Meck was

unable to offer evidence supporting its case. When Matthews appealed the dismissal to the Commission, Worker's Compensation Rule 701 prevented Char-Meck from presenting "new evidence". N.C. Admin. Code tit. 4, r. 10A.0701(6) (January 1992). Thus, the Commission's order was based on its review of the record, briefs, arguments, and motions of counsel. Char-Meck contends that the dismissal coupled with the application of Rule 701 denied it the opportunity to be heard. We agree and reverse the order of the Commission.

This Court has held, "The party against whom an award has been made does not have 'a substantive right to require the Full Commission to hear new or additional testimony. [The Commission] may, and should, do so if the due administration of justice requires.' " *Keel v. H & V Inc.*, 107 N.C. App. 536, 542, 421 S.E.2d 362, 367 (1992) (quoting *Tindall v. American Furniture Co.*, 216 N.C. 306, 311, 4 S.E.2d 894, 897 (1939)). In addition, concerning the appeal of an Opinion and Award, this Court has stated:

> We recognize that the full Commission has the authority to determine the case from the written transcript of the hearing before the deputy commissioner or hearing officer, but when that transcript is insufficient to resolve all the issues, the full Commission must conduct its own hearing or remand the matter for further hearing.

*Joyner v. Rocky Mount Mills*, 92 N.C. App. 478, 482, 374 S.E.2d 610, 613 (1988). Thus, when evidence, including the transcript from the hearing below, is insufficient to resolve all the issues, the due administration of justice requires the Commission to hold an evidentiary hearing. Here, because there was no formal hearing on the facts surrounding Char-Meck's motion, there is no transcript. Furthermore, documents, for which no evidentiary foundation was laid, were the sole source on which the Commission based its findings of fact. Consequently, the key finding, that Matthews had an office visit with Dr. Welshofer, was not supported by competent evidence in the record. As the evidence in this case was insufficient to resolve the issues raised by Matthews' appeal, the Commission should have conducted a hearing or remanded the matter for an evidentiary hearing. Its failure to do so is reversible error.

Additionally, this Court has held that procedural due process requires, " 'notice and an opportunity to be heard and to defend in an orderly proceeding adapted to the nature of the case before a compe-

tent and impartial tribunal having jurisdiction of the cause.'" *In re Appeal of Ramseur*, 120 N.C. App. 521, 526-27, 463 S.E.2d 254, 258 (1995) (citations omitted). In the instant case, Char-Meck properly excepted to the continuation of payments ordered by the Commission. Following its own procedures, the Commission required Char-Meck to participate in a trial *de novo* where Char-Meck bore the burden of proof. Because Char-Meck was not allowed to present evidence, the full Commission, in not taking evidence, eliminated any opportunity for Char-Meck to meet its burden. This offended Char-Meck's procedural due process rights. Accordingly, we reverse the order of the Commission and remand this matter for hearing. Regarding remand, this Court has stated:

> [U]pon the rare occasion that this Court requires an additional hearing upon remand [,] the full Commission must conduct the hearing without further remand to a deputy commissioner. Such an additional hearing without remand to the deputy commissioner avoids an additional delay in cases where the resolution of a plaintiff's claim has already been long delayed.

*Crump v. Independence Nissan*, 112 N.C. App. 587, 590, 436 S.E.2d 589, 592 (1993) (citations omitted). Therefore, on remand, it is the responsibility of the Full Commission to conduct the hearing.

[5] Char-Meck's last assignment of error is that the Commission exceeded its statutory authority when it taxed the expenses necessary for Matthews to attend future hearings. We agree. In *Tucker v. Workable Company*, 129 N.C. App. 695, 501 S.E.2d 360 (1998), this Court upheld an award of costs that included the employee's cost to attend the hearing. The statutory authority for upholding the award was N.C. Gen. Stat. § 97-88.1 (1991). Section 97-88.1 is titled "Attorney's fees at original hearing," but provides, "If the Industrial Commission shall determine that *any hearing* has been brought, prosecuted, or defended without reasonable ground, it may assess the whole cost of the proceedings including reasonable fees for defendant's attorney or plaintiff's attorney upon the party who has brought or defended them." N.C. Gen. Stat. § 97-88.1 (1991) (emphasis added). Section 97-88.1 supplements section 97-88 and is meant to deter unfounded litigiousness while section 97-88 is meant to compensate the injured employee for costs associated with an appeal that upholds an award but was challenged on reasonable grounds. *See Troutman v. White & Simpson, Inc.*, 121 N.C. App. 48, 464 S.E.2d 481 (1995), *disc. review denied*, 342 N.C. 516, 472 S.E.2d 26 (1996). To award

costs under this section, the Commission must first determine that a hearing has been brought, prosecuted, or defended without reasonable ground. Only then may the Commission assess the whole cost of the proceedings. As we have stated, Char-Meck had reasonable grounds for its motion and application to suspend compensation. Accordingly, the award of travel expenses is unfounded. Furthermore, the statute authorizes the taxing of costs arising from proceedings that were not based on reasonable grounds. By ordering Char-Meck to pay Matthews' future travel expenses, the Commission has assessed costs not arising from any hearing thereby exceeding their statutory authority. For the abovementioned reasons, we reverse the 20 May 1997 order of the North Carolina Industrial Commission and remand to the Full Commission for an evidentiary hearing consistent with this opinion.

Reversed and remanded to the Full Industrial Commission.

Chief Judge EAGLES and Judge TIMMONS-GOODSON concur.