JOHN ALEXANDER, Employee, Plaintiff v. WAL-MART STORES, INC., Employer, AMERICAN HOME ASSURANCE COMPANY, Carrier, Defendants

No. COA03-1215

(Filed 19 October 2004)

## 1. Workers' Compensation— injury by accident—causation—back injury

The Industrial Commission erred in a workers' compensation case by finding a causal relationship between plaintiff employee's injury by accident when a fork-lift ran over his foot and the ruptured discs in his back because: (1) plaintiff's expert could not give an opinion with reasonable medical probability on the cause of plaintiff's back injury, and the expert prefaced her statements

ALEXANDER v. WAL-MART STORES, INC.

[166 N.C. App. 563 (2004)]

on causation using language such as "my suspicion is" and "I suspect"; (2) the expert's testimony taken as a whole was that she did not possess enough information concerning plaintiff's back injury to provide more than her suspicion as to its cause; and (3) the other physicians whose depositions form part of the record on appeal were similarly uncertain as to the cause of plaintiff's back injury.

**2. Workers' Compensation— temporary total disability—injury by accident**

Although defendants contend the Industrial Commission erred in a workers' compensation case by awarding plaintiff employee temporary total disability benefits, this issue is remanded to the Commission for findings, conclusions, and awards consistent with the Court of Appeals' opinion because although the Commission erred by awarding plaintiff compensation for his back injury, defendants do not dispute that plaintiff suffered a compensable injury by accident to his foot on 8 April 1999.

**3. Workers' Compensation— restitution—credit to employer—overpayment of temporary total disability benefits**

The issue of defendants' entitlement to restitution from plaintiff employee in a workers' compensation case for alleged overpayment of temporary total disability benefits is remanded to the Industrial Commission for appropriate findings, conclusions, and awards in accordance with the disposition of the issues resolved by the Court of Appeals.

**4. Workers' Compensation— treating physician—abuse of discretion standard**

The Industrial Commission did not err in a workers' compensation case by its designation of plaintiff's treating physician, because defendants do not allege, and the Court of Appeals did not find, that the Commission abused its discretion.

**5. Costs— attorney fees—workers' compensation**

Although plaintiff employee requests that the Court of Appeals tax defendants with the costs of the instant workers' compensation appeal pursuant to N.C.G.S. § 97-88, a request for attorney fees under this statute is not properly raised as a cross-assignment of error, and thus, the Court of Appeals declines to review this request.

Judge HUDSON dissenting.

ALEXANDER v. WAL-MART STORES, INC.

[166 N.C. App. 563 (2004)]

Appeal by defendants from opinion and award entered 24 March 2003 by the North Carolina Industrial Commission. Heard in the Court of Appeals 10 June 2004.

*Brumbaugh, Mu & King, P.A., by Nicole D. Wray, for plaintiff-appellee.*

*Young Moore and Henderson, P.A., by J. Aldean Webster III, for defendant-appellants.*

THORNBURG, Judge.

Defendants Wal-Mart Stores, Inc. and American Home Assurance Company appeal from an opinion and award entered 24 March 2003 by the North Carolina Industrial Commission ("the full Commission") in favor of plaintiff John Alexander. Defendants argue four issues on appeal: (1) that the full Commission erred by finding a causal relationship between plaintiff's injury by accident at work and plaintiff's back injury; (2) that the full Commission erred in awarding plaintiff temporary total disability benefits; (3) that defendants are entitled to restitution from plaintiff because of overpayment of benefits; and (4) that the full Commission erred by designating Dr. Toni Harris as plaintiff's treating physician. In addition, plaintiff argues that this Court should tax defendants with the costs associated with this appeal.

## Background

The evidence before the full Commission included the following: On 8 April 1999, plaintiff sustained a compensable injury by accident to his left foot while working for defendant Wal-Mart. Plaintiff was treated by several physicians for this injury including Dr. Toni Harris, who specializes in pain management. Dr. Harris administered an epidural to plaintiff, which caused plaintiff to experience severe back pain. Dr. Harris then discovered that plaintiff had herniated disks in his back. Dr. Harris wanted to investigate whether plaintiff's back problems were related to his foot and ankle pain. She attempted to refer plaintiff to a neurosurgeon for further evaluation, but defendants denied this referral.

Defendants did refer plaintiff to Dr. Robert Fletcher for an independent medical evaluation of plaintiff's foot and back injuries. Dr. Fletcher conducted this evaluation on 21 July 2000 and opined that plaintiff's back injury was not related to plaintiff's accident at work. On 17 July 2000, defendants filed an Industrial Commission form 33 requesting a hearing to determine "whether the medical treatment

plaintiff has been receiving is related to the 4-8-99 incident" and defendants' "further liability to plaintiff, if any."

Following a hearing on 9 May 2001, the Chief Deputy Commissioner of the North Carolina Industrial Commission issued an opinion and award ordering defendants to continue to pay plaintiff temporary total disability benefits until further order of the Commission. The opinion and award also designated Dr. Harris as plaintiff's treating physician and allowed Dr. Harris to authorize a referral to a neurosurgeon "should it be deemed necessary to effect a cure, provide relief or reduce the period of Alexander's disability." On 24 March 2003, the full Commission filed an opinion and award affirming the opinion and award of the chief deputy commissioner with minor modifications. Defendants appeal.

### Standard of Review

The standard of review for an appellate court reviewing an appeal from the North Carolina Industrial Commission is limited to determining whether competent evidence supports the findings of fact and whether the findings of fact support the full Commission's conclusions of law. *Deese v. Champion Int'l Corp.*, 352 N.C. 109, 116, 530 S.E.2d 549, 553 (2000). Thus, this Court may not "weigh the evidence and decide the issue on the basis of its weight. The court's duty goes no further than to determine whether the record contains any evidence tending to support the finding." *Anderson v. Construction Co.*, 265 N.C. 431, 434, 144 S.E.2d 272, 274 (1965). Furthermore, the evidence tending to support plaintiff's claim must be taken in the light most favorable to plaintiff, and plaintiff "is entitled to the benefit of every reasonable inference to be drawn from the evidence." *Adams v. AVX Corp.*, 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998).

### Causation

[1] Defendants first contend that competent evidence does not support the full Commission's determination that the 8 April 1999 workplace accident caused plaintiff's ruptured disc. The full Commission made the following finding of fact on causation:

The greater weight of the evidence establishes that plaintiff's ruptured disc was a result of his accident on April 8, 1999. Dr. Harris's testimony, taken as a whole, establishes that it was "likely" that the rupture occurred during the accident. Dr. Harris' opinion is given more weight than that of Dr. Fletcher. First, Dr. Fletcher was not aware that plaintiff had fallen during the acci-

ALEXANDER v. WAL-MART STORES, INC.

[166 N.C. App. 563 (2004)]

dent, even though when made aware of that fact, he testified that it was not likely that a simple fall would cause the rupture.

Second, Dr. Harris testified that she had previously treated patients in which an asymptomatic disc as to back pain could produce the symptoms in the feet such as plaintiff was experiencing. Third, Dr. Fletcher, when confronted with Dr. Harris' opinions, admitted that he would not disagree with Dr. Harris based on his opinion of her medical skills.

Based on this finding, the full Commission concluded as a matter of law that "[p]laintiff has proven by the greater weight of the evidence that the ruptured disc at L5-S1 was caused by the accident of April 8, 1999."

After careful review of the record on appeal, we conclude that competent evidence does not support the full Commission's finding and conclusion that plaintiff's ruptured disc was caused by the 8 April 1999 workplace accident. Dr. Harris, by deposition, testified that she started treating plaintiff on 16 March 2000. Dr. Harris indicated that plaintiff had been referred to her for treatment of foot and ankle pain stemming from an injury at work. In order to determine "if there was any component of the foot pain from his back," Dr. Harris administered an epidural injection to plaintiff's back. Dr. Harris testified that plaintiff returned to her office shortly after the epidural complaining of back pain. An MRI ordered as a result of this complaint revealed a herniated disk at L5-S1. In her deposition, Dr. Harris explained that she believed the volume injected with the epidural put pressure on the disk, causing plaintiff to feel back pain.

Dr. Harris then stated:

My suspicion is that . . . he probably, when he fell—I think when this thing ran over his foot, he didn't just stand there. He fell backwards as it was going over his foot. I mean, you can imagine that you would respond, your whole body would respond. I suspect that he got the herniated disk then . . . .

Thereafter, the following exchange occurred between Dr. Harris and plaintiff's attorney:

Q. [Plaintiff's attorney] You testified that you suspected—suspected that his herniated disk occurred when he had the accident at work. Can you say that to a reasonable degree of medical probability?

A. [Dr. Harris] I don't know. I don't know. All I wanted to know at the time was I wanted to treat him, to see if his foot pain got any better, and that would tell us that some of the problem with the foot was from the back.

On cross examination this exchange transpired between defendants' attorney and Dr. Harris:

A. [Dr. Harris] I was not—I was not treating a back condition. I was treating—I was treating the foot pain. And if that one nerve that goes to that foot starts in the back, if I can't get that nerve down here, I'm going to try to get it in the back.

Q. [Defendants' attorney] But you are basing this on an assumption that he injured his back at the time of the fall?

A. [Dr. Harris] The chances are likely, but her [the claims adjuster] mistake was not letting me do this, 'cause if the foot didn't get any better, we could say, "Well the disk probably isn't doing it." You can't tell.

We conclude that this testimony does not support the full Commission's findings and conclusions that plaintiff's accident at work caused his back injury. In a workers' compensation case, the plaintiff has the burden of proving causation by the preponderance of the evidence. *Holley v. Acts, Inc.*, 357 N.C. 228, 231-32, 581 S.E.2d 750, 752 (2003). Where the nature of the injury alleged involves complicated medical questions, only an expert can give competent evidence as to causation. *Click v. Freight Carriers*, 300 N.C. 164, 167, 265 S.E.2d 389, 391 (1980). Further, "[a]lthough expert testimony as to the *possible* cause of a medical condition is admissible if helpful to the jury, it is insufficient to prove causation, particularly 'when there is additional evidence or testimony showing the expert's opinion to be a guess or mere speculation.' " *Holley*, 357 N.C. at 233, 581 S.E.2d at 753 (2003) (quoting *Young v. Hickory Bus. Furn.*, 353 N.C. 227, 230, 538 S.E.2d 912, 915 (2000)) (internal citation omitted).

In the instant case, plaintiff presented Dr. Harris's expert testimony on causation as required by our Supreme Court's holding in *Click*. However, when asked directly, Dr. Harris could not give an opinion with reasonable medical probability on the cause of plaintiff's back injury. Furthermore, Dr. Harris prefaced her statements on causation using language such as "[m]y suspicion is" and "I suspect." Dr. Harris did use the word "likely," in response to a question on cau-

sation by defendants' attorney. However, the context in which it was used shows that Dr. Harris's concern was with a possible relationship between plaintiff's back injury and his foot pain, as opposed to an attempt to evaluate the causal link between the 8 April 1999 accident and plaintiff's back injury.

We conclude that Dr. Harris's testimony "taken as a whole" was that she did not possess enough information concerning plaintiff's back injury to provide more than her suspicion as to its cause. As she repeatedly indicated in her deposition, she was not treating plaintiff's back condition. She expressly qualified the statements she did make concerning the causation of plaintiff's back injury as her suspicions. Under the North Carolina Supreme Court's holding in *Young v. Hickory Business Furniture*, testimony of this nature is not sufficiently reliable to constitute competent evidence of causation. *Young v. Hickory Bus. Furn.*, 353 N.C. 227, 230, 538 S.E.2d 912, 915 (2000); cf. *Edmonds v. Fresenius Med. Care*, —— N.C. App. ——, ——, 600 S.E.2d 501, 505 (2004) (causation evidence is competent if it is the product of a reasoned medical analysis). Accordingly, the full Commission erred in basing its finding of fact on causation upon Dr. Harris's testimony.

The other physicians whose depositions form part of the record on appeal were similarly uncertain as to the cause of plaintiff's back injury. In his deposition, Dr. Fletcher indicated that the type of herniated disc plaintiff was diagnosed with is not consistent with plaintiff's description of his accident at work. When asked to explain this opinion, Dr. Fletcher testified that he primarily sees lifting, bending, and pushing on objects as causing hernias and that he could not recall "seeing many herniated discs from that type of an incident [experienced by plaintiff]." Dr. Fletcher also testified that only in rare cases is it possible to have a herniated disc without experiencing any symptoms. Dr. Peter Chung testified, by deposition, that it was "possible" that the 8 April 1999 accident caused plaintiff's back injury, but that he "would prefer not to—to give any indications as to its probability" because "[t]hat would best be answered by an orthopedic or neurosurgeon, because there are many causes of disk herniation."

Thus, the record does not support a finding that plaintiff's 8 April 1999 accident at work caused his back injury. Accordingly, the full Commission erred by concluding as a matter of law that plaintiff established a causal relationship between the 8 April 1999 accident and his back injury.

ALEXANDER v. WAL-MART STORES, INC.

[166 N.C. App. 563 (2004)]

## Total Temporary Disability

[2] Defendants next argue that the full Commission erred by awarding plaintiff temporary total disability benefits. Although we agree that the full Commission erred by awarding plaintiff compensation for his back injury, defendants do not dispute that plaintiff suffered a compensable injury by accident to his foot on 8 April 1999. Accordingly, we remand consideration of this issue to the North Carolina Industrial Commission for findings, conclusions, and awards consistent with our holding herein.

## Credit for Overpayment

[3] Defendants argue that they are entitled to restitution from plaintiff for alleged overpayment of temporary total disability benefits. Under N.C. Gen. Stat. § 97-42 (2003), the Industrial Commission may in certain circumstances award credit to an employer who voluntarily makes payments to an employee whose workers' compensation claim is being disputed. N.C. Gen. Stat. § 97-42 (2003); see Foster v. Western-Electric Co., 320 N.C. 113, 116, 357 S.E.2d 670, 673 (1987). "The decision of whether to grant a credit is within the sound discretion of the Commission." Shockley v. Cairn Studios, Ltd., 149 N.C. App. 961, 966, 563 S.E.2d 207, 211 (2002), disc. rev. dismissed, 356 N.C. 678, 577 S.E.2d 887-88 (2003). Accordingly, we remand consideration of this issue to the Industrial Commission for appropriate findings, conclusions, and awards in accordance with the disposition of the issues resolved herein.

## Dr. Harris as Treating Physician

[4] Defendants argue that Dr. Harris should not be designated as plaintiff's treating physician. Under N.C. Gen. Stat. 97-25 (2003), either the employer or the employee in a workers' compensation matter may make a motion to designate the treating physician. See Matthews v. Charlotte-Mecklenburg Hosp. Auth., 132 N.C. App. 11, 18, 510 S.E.2d 388, 393-94 (1999), disc. rev. denied, 350 N.C. 834, 538 S.E.2d 197 (1999). The Industrial Commission's approval or disapproval of these motions is subject to an abuse of discretion standard. See Franklin v. Broyhill Furniture Indus., 123 N.C. App. 200, 207-08, 472 S.E.2d 382, 387 (1996), cert. denied, 344 N.C. 629, 477 S.E.2d 39 (1996). In the instant case, defendants do not allege and this Court does not find that the full Commission abused its discretion in designating Dr. Harris as plaintiff's treating physician. Accordingly, this assignment of error is overruled.

**ALEXANDER v. WAL-MART STORES, INC.**

[166 N.C. App. 563 (2004)]

Plaintiff's Request for Attorneys' Fees

**[5]** In his appellate brief, plaintiff requests that this Court tax defendants with the costs of the instant appeal pursuant to N.C. Gen. Stat. § 97-88 (2003). However, a request for attorneys' fees under this statute is not properly raised as a cross-assignment of error. *See Guerrero v. Brodie Contrs., Inc.*, 158 N.C. App. 678, 686, 582 S.E.2d 346, 351 (2003). Accordingly, we decline to review this request.

This matter is remanded to the North Carolina Industrial Commission for disposition in accordance with this opinion.

Reversed in part and remanded.

Judge ELMORE concurs.

Judge HUDSON dissents.

HUDSON, Judge, dissenting.

Having carefully reviewed the deposition and medical notes of Dr. Harris, I conclude that the majority has incorrectly applied the standard of review to finding of fact number 20. The crucial portion of the finding, which is quoted entirely in the majority opinion, says that "The greater weight of the evidence establishes that plaintiff's ruptured disc was a result of his accident on April 8, 1999. Dr. Harris' testimony, taken as a whole, establishes that it was 'likely' that the rupture occurred during the accident." Because the evidence does support this finding, I respectfully dissent.

Although the quotations from the majority opinion do reflect testimony in the deposition, there are also more definite expressions of opinion in other parts of the testimony and records. At the beginning of the deposition, counsel stipulated that this particular physician, Dr. Toni Harris is an expert in pain management. She treated the plaintiff beginning in March of 2000 for his foot pain. During the treatment, she began to suspect that the pain might be radiating from the back, and ordered an epidural injection to test that hypothesis. After the injection, plaintiff began to exhibit symptoms of pain near the site of the injection in his spine, and continued to have foot pain. In much of the deposition, the exasperated doctor tried repeatedly to get defense counsel to grasp that it was her opinion that the foot pain was due in part to direct trauma to the foot, and in

part to radiating pain from a disc problem, both of which she related to the work accident.

In the medical records, which the parties also stipulated into evidence, Dr. Harris states:

03/16/00

. . . The [plaintiff] was involved in a work-related injury in April 1999. He was working at Wal-Mart when his left foot was run over by a fork-lift . . . The forklift went over the posterolateral aspect of the left foot and up the ankle. The force was great enough to push him down to the ground . . . The patient reports that he has numbness, tingling and throbbing pain in the left foot, with intermittent, sharp, shooting pain . . . The patient also reports pain extending up the legs . . .

06/01/00

**Addendum:** I spoke to Melissa, the adjuster on the case . . . I tried to explain that <u>the back injury was a part of the problem from the beginning.</u> . . . (emphasis added)

In addition, in her testimony, she explained as follows:

A.  . . . I think there was a—in the foot, I think part of the problem in the foot was from the direct trauma of the foot.

Q.  Was that a foot injury?

A.  It's all a foot injury.

Q.  Okay.

A.  And part of it—you can't separate the body like that.

Q.  When you're saying—are you saying there's not an injury in the back?

A.  There's a herniated disk in the back. But it's pressing on the nerves, that's getting damaged—

Q.  The pathology is in the back?

A.  —that goes to the foot.

Q.  Right. It's the pathology in the back, though?

A.  The pathology in the back causing the problem in the foot.

And, most directly, counsel asked the doctor whether her opinions were based on an "assumption" that plaintiff's disk was injured the fall. It is clear from Dr. Harris' response that, in her opinion, it was "likely" that the foot pain started in the back.

The Commission's finding that Dr. Harris' testimony as a whole "establishes that it was 'likely' that the rupture occurred during the accident," tracks this testimony exactly.

In reaching the contrary conclusion, the majority applies the standard of review in a manner contrary to the repeated instructions of the Supreme Court. The Supreme Court has stated several times that the role of the Court of Appeals is "limited to reviewing whether any competent evidence supports the Commission's findings of fact and whether the findings of fact support the Commission's conclusions of law." *Deese v. Champion Int'l Corp.*, 352 N.C. 109, 116, 530 S.E.2d 549, 553 (2000). In reviewing a workers' compensation claim, this Court "does not have the right to weigh the evidence and decide the issue on the basis of its weight. The court's duty goes no further than to determine whether the record contains any evidence tending to support the finding." *Adams v. AVX Corp.*, 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998) (quoting *Anderson v. Construction Co.*, 265 N.C. 431, 434, 144 S.E.2d 272, 274 (1965)), *reh'g denied*, 350 N.C. 108, 532 S.E.2d 522 (1999). If there is any evidence at all, taken in the light most favorable to the plaintiff, the finding of fact stands, even if there is substantial evidence to the contrary. *Id.* The plaintiff is entitled to the benefit of every inference in his or her favor, whether or not he or she prevailed in the Commission. *Poole v. Tammy Lynn Ctr.*, 151 N.C. App. 668, 672, 566 S.E.2d 839, 841 (2002). The Full Commission is the "sole judge of the weight and credibility of the evidence," and this Court may not second-guess those determinations. *Deese*, 352 N.C. at 116, 530 S.E.2d at 553.

Here, where the stipulated records and the testimony of Dr. Harris do support the Commission's findings, when viewed in light of the standard of review, the finding should be upheld. I do not believe it is the role of this Court to comb through the testimony and view it in the light most favorable to the defendant, when the Supreme Court has clearly instructed us to do the opposite. Although by doing so, it is possible to find a few excerpts that might be speculative, this Court's role is not to engage in such a weighing of the evidence. As demonstrated above, much of the evidence reveals that the doctor expressed her opinions repeatedly and without equivocation. Thus, I

IN RE D.L., A.L.

[166 N.C. App. 574 (2004)]

conclude that the Commission's finding is supported, and that we should affirm the opinion and award.